# LYNCH *v.* BOYER.

[No. 8,369.    Filed June 24, 1914.]

1. CHATTEL MORTGAGES.—*Receipts.*—*Statutes.*—*"Household Goods."* —Section 8638 Burns 1914, Acts 1897 p. 271, §3, specifying what shall be set forth in the receipt for money paid to the mortgagee of household goods, and providing that the mortgage shall be void unless such receipt is executed in conformity to such statute, was designed to protect householders and their families against the consequences of improvident agreements through which they may be stripped of those articles which are necessary to their comfort, and the term "household goods" as used therein means such goods as, being suitable to the condition and station in life of the mortgagor, are used by him in his household for personal, home or household convenience, and does not include goods kept

for mere purpose of trade or business, though suitable to household use; hence a mortgage executed by a single man for the purchase price of furniture used in a rooming house conducted by him was not rendered invalid by the mortgagee's failure to execute the statutory receipt.   p. 516.

From Superior Court of Marion County (84,360); *Charles J. Orbison*, Judge.

Action by Edith Boyer against Joseph Lynch. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Joseph R. Williams* and *Chalmer I. Schlosser*, for appellant.

*Emsley W. Johnson* and *Everett M. Schofield*, for appellee.

IBACH, P. J.—Complaint to foreclose a chattel mortgage on certain house furniture and furnishings. Answer in general denial, and a second paragraph alleging that the property on which the mortgage was sought to be foreclosed was household goods used by Frank Osborn, the owner thereof, for the purpose of keeping house, that he had paid on said mortgage $5, and was given a receipt as follows: "June 21, 1911, received of Frank Osborn, $5.00 on mortgage." That appellee failed and neglected to execute a receipt in conformity with the provisions of §8638 Burns 1914, Acts 1897 p. 271, §3, and thereafter Frank Osborn sold and conveyed said personal property to appellant Joseph Lynch, who has since sold and conveyed the same to Henry Harper, who is now the owner thereof, and appellant, Joseph Lynch, asks that appellee take nothing and that said mortgage be declared void. Reply that appellee had sold the property described in the complaint to Frank Osborn, and he as a part of the purchase price, had executed his promissory notes together with the chattel mortgage described in the complaint, to secure them. That Frank Osborn at a time when he was acquainted with all of the terms of the statute providing for the giving of receipts for payments made on mortgages on household

goods, and at a time when appellee, who was a woman, was not familiar with business transactions and was not familiar with the statutory requirements concerning the giving of receipts for payments made on chattel mortgages, and with the intent and purpose to defraud and take advantage of her ignorance concerning the giving of receipts for payments made under such circumstances, and with the purpose and intent to defraud appellee, did then and there pay to the appellee $5, and with the aforesaid fraudulent purpose, design and intent, dictated a certain receipt, which was set out in the appellant's second paragraph of answer, and had the appellee to sign the same and deliver the same to the defendant Osborn, and other allegations to show that said receipt was obtained by fraud. A demurrer to this paragraph of reply was overruled, and upon the issues thus joined, there was a trial by the court, a special finding of the facts substantially as set forth by the reply, conclusions of law and judgment thereon for appellee.

It is urged that the court erred in overruling the demurrer to the reply, and, under the motion for new trial, that the evidence does not support the court's decision. But appellee contends, not only that the court did not err in these particulars, but also that §8638, *supra*, does not apply to the present case. Section 8638 Burns 1914, Acts 1897 p. 271, §3, provides: "It shall be the duty of the holder of any mortgage on household goods or the agent of such holder or mortgagee whose duty it is to receive money on such mortgage, when any money, check or anything taken in payment on such mortgage or interest due thereon is received by them from the mortgagor, or from any person acting for the mortgagor, to execute a receipt to the mortgagor, which receipt shall be dated and signed by the mortgagee or his agent, and shall state the date and the amount of the loan secured by such mortgage, the amount of money actually paid to the mortgagor on such

loan, the amount of money charged by the mortgagee or his agent for services and expenses in connection with said loan, the rate of interest, the amount of the payment received and how applied, and the amount yet unpaid on said loan, and when it will be due. If any such holder or mortgagee or the agent of such holder or mortgagee, whose duty it is to receive such payments, shall fail to execute and deliver such receipt to the mortgagor such mortgage shall be void." This section and the act of which it is a part have been construed twice by our higher courts. *Zumpfe* v. *Gentry* (1899), 153 Ind. 219, 54 N. E. 805; *Drimmie* v. *Hendrickson* (1912), 51 Ind. App. 198, 99 N. E. 436. In the former case, the court, in holding the law constitutional, said: "The law is of uniform operation throughout the State, and applies equally to all persons who execute, and who hold, chattel mortgages upon that species of personal property described as household goods. The property, so designated, usually embraces those articles which are necessary, if not indispensable, to the comfort and convenience of the owner or his family, and the deprivation of which must be attended with hardship and suffering to a greater or less degree. In many of the states of the Union, a part of the property exempted from seizure and sale on execution is of this kind, and is so described. * * * The statute involved here is designed to protect householders and their families, to some extent, against the consequences of improvident agreements through which they may be stripped of those articles which are necessary to their comfort. Like the statutes providing for exemptions from sale on execution, it is founded on considerations of public policy and humanity, and there is good reason for making this particular class of goods an exception to the rules governing the transfer and encumbrance of personal property in general." In the case of *Drimmie* v. *Hendrickson, supra,* it was held that when payments are made on a mortgage of household

goods, receipts must be given as required by statute or the mortgage will become void.

But, does §8638, *supra,* govern the mortgage under consideration? The answer to this question depends upon the construction of the term "household goods." A household is a family living together, or persons who dwell together as a family. *May* v. *Smith* (1872), 48 Ala. 483, 488; *Woodward* v. *Murray* (1820), 18 Johns. (N. Y.) *400; *Arthur* v. *Morgan* (1884), 112 U. S. 495, 5 Sup. Ct. 241, 28 L. Ed. 825; Anderson, Law Dict. 448. In the case of *Schoenhofen Brewing Co.* v. *Merrion* (1896), 67 Ill. App. 123, 125, it was said, in considering a somewhat similar act that the words "household goods" as used in an act of July 7, 1889, regulating chattel mortgages, in providing that no chattel mortgage executed by a married man or married woman on household goods shall be valid unless joined in by the husband or wife, as the case may be, means such goods as being suitable in the condition and station of life of the mortgagor and the way he lives are used by him in his household for personal, home or household convenience, and do not include goods kept for mere purposes of trade or business.

The proof in the present case shows that appellant was a single man, that the goods in suit were the furniture and furnishings of a rooming house, and that the mortgage was given to secure notes given for their purchase price. There is no evidence that appellant maintained a household, used the rooming house for household purposes, or used the goods in suit for personal, home or household conveniences. So far as the evidence shows they were merely a part of his implements of trade, no more household goods than the furniture of an office, a store, or a barber shop. The question as to what are "household goods" has arisen most frequently under the exemption statutes, which in some states exempt household goods from execution. It is held universally that the furniture and furnishings of a hotel are not household goods within the meaning of the statute. There

are some cases which hold that when goods are actually used for household purposes, the fact that boarders are also kept in the home does not preclude exemption and does not put the furnishings on the same footing as hotel and restaurant furniture. We think that the intention of the legislature, in using the term household goods was to use the term in its strict sense as being those articles and goods suitable to the station and condition in life of the mortgagor which are used in his household for personal, home, or household convenience, and that the term does not apply to goods which from their character are suitable for household use, but which are not applied to such use, as where they are kept for sale at wholesale or retail, or are used as the furnishings of a hotel or restaurant, or as in the present case, used as the furniture of a rooming house, when no household is maintained in connection therewith.

Further, from the context of the law itself, it is apparent that its provisions are directed primarily to those who loan money and take chattel mortgages on household goods as security, and not to the owner of goods who sells them and takes a mortgage to secure the purchase price. We therefore hold that §8638, *supra,* does not apply to the present case. It therefore is unnecessary to consider whether the reply is good against demurrer, and whether the evidence shows fraud in obtaining the receipt, but we may say that there is evidence which strongly tends to show that defendant Osborn fraudulently procured the receipt to be prepared by appellee in such a manner as not to conform to the provisions of §8638, *supra,* with the view to rendering the mortgage void, and were we to hold that said section applied, we would yet be compelled to affirm the case. Judgment affirmed.

NOTE.—Reported in 105 N. E. 786. See, also, 7 Cyc. Anno. (1915) 66-New.